## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERIACE STONE,** | : | **CIVIL NO. 1:15-CV-1734** |
| | : | |
| **Petitioner** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN WETZEL**, *et al.*, | : | |
| | : | |
| **Respondents** | : | |

## MEMORANDUM

Petitioner Deriace Stone ("Stone") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of York County, Pennsylvania.[1] (Doc. 1). For the reasons discussed below, the court will deny the petition.

## I.    Factual Background

The factual background of this case has been aptly summarized by the Pennsylvania Superior Court as follows:

> On November 6, 2008, a jury found [Stone] guilty of possession of a controlled substance and other drug-related crimes as well as a weapons offense. On December 31, 2008, [Stone] was sentenced to an aggregate term of 5½ to 11 years' imprisonment.
>
> [Stone] was apprehended after police searched trash bags that abutted [Stone's] property and found a plastic sandwich bag containing marijuana particles. Police then obtained a search warrant for

---

[1] Stone is no longer in the custody of the Pennsylvania Department of Corrections ("DOC"). <u>See</u> PA. DOC Inmate Locator, available at: http://inmatelocator.cor.pa.gov/#/

[Stone's] residence by presenting an affidavit of probable cause that read as follows:

> This affiant is an officer with the Spring Garden Township Police Department and a member of the York County Drug Task Force.
>
> Based on the following information I believe there is Marijuana present at 719 State St.
>
> Specifically, I have reveived [sic] information from concerned persons that illegal drugs are being used and sold at 719 State St.
>
> On August 14, 2007 I picked up trash from the north side of the residence. The trash was located in an area where trash is normally located for 719 State St. I have picked up trash from 719 State St. at this same location on four separate occasions in the past. During normal routine patrol I observe trash to be normally placed at this same location. Further, there are no houses located on the north, west or east sides of 719 State St. There is only one home attached to the south side of the residence. The trash was located on the north side of the residence. 719 State St. is bordered by three roadways located on the north, west and east sides of the residence.
>
> The trash was sitting in an area between the roadway and the north side of the residence which is appx. two feet wide.
>
> The following items were recovered from the trash, loose cigar tobacco
>
> two Dutch Masters cigar labels four plastic sandwich type bags
>
> one plastic sandwich type bag containing green vegetable matter particles
>
> This green vegetable matter field tested positive as marijuana.

Affidavit of Probable Cause, 8/14/07 at 2.

As a result of the search of the house, police found a large quantity of marijuana, drug paraphernalia, and two firearms. [Stone] filed an omnibus pre-trial motion in which he sought suppression of the evidence. [Stone] argued that the house search yielded "fruit of the poisonous tree" because it was based upon an illegal search of [Stone's] trash bags. The bags were not placed where they would be for pick-up by the trash collector but were alongside [Stone's] property abutting an alley. [Stone] argued that police had to enter his property to access the trash bags and that, therefore, they could not be considered as abandoned property.

. . .

[Stone's] suppression motion was denied, and as noted, he was subsequently convicted and sentenced.

Commonwealth v. Stone, 2014 WL 10982116, *1-2 (Pa. Super. 2014).

## II.  State Court Proceedings[2]

In November 2007, a criminal information was filed in the Court of Common Pleas of York County charging Stone with possession with intent to deliver, possession of drug paraphernalia, criminal conspiracy to commit possession with intent to deliver, person not to possess a firearm, and possession of marijuana. (Doc. 1; https://ujsportal.pacourts.us, electronic docket number CP-67-CR-0006522-2007). On November 6, 2008, a jury found Stone guilty of the crimes. (Id.) On December 31, 2008, Stone was sentenced to an aggregate term of 5½ to 11 years' imprisonment. (Id.)

---

[2] A federal habeas court may take judicial notice of state court records. Minney v. Winstead, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); see also Reynolds v. Ellingsworth, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing this petition, the court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of York County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.

Stone filed a timely direct appeal. On March 17, 2011, the Pennsylvania Superior Court affirmed the judgment of sentence, and on March 1, 2012, the Pennsylvania Supreme Court denied appeal. Commonwealth v. Stone, 26 A.3d 1196 (Pa. Super. 2011) appeal denied, 615 Pa. 766, 40 A.3d 1236 (2012).

On May 9, 2012, Stone filed a timely *pro se* petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46, arguing, *inter alia*, that appellate counsel was ineffective in failing to properly pursue a suppression claim and that he was due certain credit for time served. (Doc. 31-4 at 6-29, PCRA Petition). Counsel was appointed and a hearing was held on September 26, 2012. (Doc. 31-4 at 38-107, Transcript of PCRA Hearing). On October 24, 2012, the PCRA court entered an opinion and order granting Stone relief as to credit for time-served, but denied relief as to all other issues, including appellate counsel's ineffectiveness in pursuing his suppression claim. (Doc. 31-4 at 133-43, PCRA Opinion and Order dated October 24, 2012). Stone filed a timely notice of appeal to the Pennsylvania Superior Court raising the sole issue of appellate counsel's ineffectiveness in presenting the suppression claim on appeal. (Doc. 31-4 at 147, Notice of Appeal; see also https://ujsportal.pacourts.us, electronic docket number 2078 MDA 2012). On February 12, 2014, the Pennsylvania Superior Court affirmed the PCRA court's decision denying the petition. (Doc. 31-5 at 60-70, Pennsylvania Superior Court Order, No. 2078 MDA 2012; Commonwealth v. Stone, 2014 WL 10982116 (Pa. Super. 2014)). Stone filed a petition for allowance of appeal with the Pennsylvania Supreme Court. (Doc. 31-5 at 75-90, Petition for Allocatur, No. 154 MAL 2014). On August 29, 2014, the Pennsylvania Supreme Court denied

the petition for allowance of appeal. (Doc. 31-5 at 101, Pennsylvania Supreme Court Order Denying Allocatur, No. 154 MAL 2014).

On April 14, 2015, Stone filed a second PCRA petition. (Doc. 31-5 at 106-118, Second PCRA Petition). On April 17, 2015, the PCRA court provided Stone with notice of its intent to dismiss the petition because, *inter alia*, it was not timely filed. (Doc. 31-5 at 119-20, Rule 907 Notice). On July 13, 2015, the PCRA court dismissed the second PCRA petition as untimely. (Doc. 31-5 at 164-68, Opinion in Support of Order denying PCRA Petition). Stone did not appeal the dismissal of his second PCRA petition.

On July 2, 2015, Stone filed a third PCRA petition. (Doc. 31-5 at 122-60, Third PCRA Petition). On July 13, 2015, the PCRA court provided Stone with notice of its intent to dismiss the petition based, in part, on its untimeliness. (Doc. 31-5 at 161-63, Rule 907 Notice). On August 14, 2015, the PCRA court dismissed the third PCRA petition as untimely. (Doc. 31-5 at 169-70, Order denying PCRA Petition). Stone did not appeal the dismissal of his third PCRA petition.

Stone filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1).

**III.    Standards of Review**

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. <u>Preiser v. Rodriguez</u>, 411 U.S.

475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 68.

## A.    Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).[3] Respect for the state court system requires that the petitioner demonstrate that the claims in question have been

---

[3] In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254. Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004). Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only to the Pennsylvania Superior Court.

"fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999); see also Nara v. Frank, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the petitioner need not cite "book and verse" of the federal Constitution, Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting Picard, 404 U.S. at 275, 92 S.Ct. 509).

**B.    Merits Standard**

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

(1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278,

296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000);

cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979).  "This provision essentially requires

the district court to step into the shoes of an appellate tribunal, examining the

record below to ascertain whether sufficient evidence existed to support the

findings of fact material to the conviction."  Breighner v. Chesney, 301 F. Supp. 2d

354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]).  Mere disagreement

with an inferential leap or credibility judgment of the state court is insufficient to

permit relief.  Porter, 276 F. Supp. 2d at 296; see also Williams v. Taylor, 529 U.S.

362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the

finding lacks evidentiary support in the state court record or is plainly controverted

by evidence therein should the federal habeas court overturn a state court's factual

determination.  Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. at 408-09.

## IV.    **Discussion**

In the instant petition, Stone asserts that his constitutional rights under the

Fourth Amendment were violated due to an illegal search and seizure, appellate

counsel was ineffective in failing to properly pursue his suppression claim, and his

constitutional rights under the Confrontation Clause were violated because he was

unable to confront the "concerned persons" in the affidavit of probable cause.  (Doc.

1 at 5-11).

### A.    **Fourth Amendment Claim**

---

[4] "If the applicant challenges the sufficiency of the evidence adduced in such
State court proceeding to support the State court's determination of a factual issue
made therein, the applicant, if able, shall produce that part of the record pertinent
to a determination of the sufficiency of the evidence to support such
determination."  28 U.S.C. § 2254(f).

Stone asserts that his Fourth Amendment rights were violated for the following reasons: (1) the trash bags that were searched and seized were either on his property or on the curtilage of his property, and the officer did not have a warrant to effectuate the search; (2) there was a lack of probable cause to support the issuance of a search warrant; (3) the affiant failed to set forth the "veracity, reliability, and basis of knowledge" in his affidavit of probable cause regarding the "concerned persons"; and, (4) the affiant made "fabricated" and misleading accusations, and omitted material statements to procure a search warrant of Stone's property.  (Doc. 1 at 5-11).

In Stone v. Powell, the United States Supreme Court held that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  The Third Circuit Court of Appeals stated, "[u]nder Stone v. Powell, a federal court may not reexamine the state court's determination that no Fourth Amendment violation occurred, that a violation had occurred but that introduction of its fruits was harmless, or that any Fourth Amendment violation that might have occurred had harmless results."  Gilmore v. Macks, 799 F.2d 51, 56 (3d Cir. 1986) (citing Stone, 428 U.S. 465).

In the instant matter, Stone raised his Fourth Amendment claims in state court.  Stone filed a pretrial motion wherein he sought suppression of the evidence

in question.  On July 10, 2008, a suppression hearing was held, and the officer who searched Stone's property testified as follows:

Q. Okay.  And can you describe to the Court where the trash was located?

A. It's on the north side of the residence.  The main roadway travels along the west side, which is State Street, and then there's an alley on the north side and an alley on the—east side of the residence, and the south side is attached to another residence.

The trash was actually on a—sitting next to an extended portion of the house, which is like a sun room.  There's approximately 18 to 24 inches of space there between the actual house and the roadway, and that's where the trash was always sitting.

. . . .

Q.  Now, let's specifically talk about August 14th of 2007.  I believe that is a trash pull at issue here.  Again, what time did you do that?

A. 5:30 a.m.

Q. And when you pulled the trash, were they in trash cans?  Were they bags?  Can you explain to the Court how that was?

A. They were in—the one I picked up in particular was a loose garbage bag sitting actually partially on the roadway.  It was just a small portion between the house and the roadway, like I said, approximately 18 inches to 24 inches.

He also had used to have a trash can sitting out there.  I believe it was a plastic trash can.

Q. How many bags were out there on August 14th?

A. There was, I believe, two outside of the trash can, and I'm not sure how many in.

Q. And it's your testimony that you only took the one?

A. I believe I took both bags outside the trash can.

Q. Did you look inside the trash can at all, officer?

A. I don't recall.  I don't believe I did.

Q. But it's your testimony that the bags that you pulled were partially on Utah Alley?

A. Yes.

Q. And is Utah Alley a private or a public roadway?

A. Public roadway.

Q. Did you step onto the property at 719 State Street at all to pull this trash?

A. No, I didn't. I was on the roadway on Utah Alley.

Commonwealth v. Stone, 2014 WL 10982116 at *2 (citing Notes of testimony, 7/10/08 at 7; 9-11).  The trial court denied the suppression motion, and Stone was ultimately convicted and sentenced.

Stone then raised his Fourth Amendment claims on direct appeal, again arguing that evidence was obtained in an unconstitutional search and seizure.  On March 17, 2011, the Pennsylvania Superior Court addressed Stone's Fourth Amendment claims on the merits, affirmed the denial of the suppression motion, and affirmed Stone's conviction and sentence.  (Doc. 31-3 at 220-28).  The Pennsylvania Superior Court explained as follows:

> [Stone] first asks us to determine whether the warrantless search of the trash bag "was unlawful under the Fourth Amendment of the Constitution of the United States and Article I, § 8 of the Pennsylvania Constitution based upon the location and circumstances surrounding its discovery."  Appellant's brief at ii, 10.  [Stone] "does not dispute that the bag was located in an area accessible to the public," but argues against finding it abandoned on the grounds that police could not verify that the bag contained garbage, or that it had been placed out for collection by a trash collector.  Appellant's brief at 10 (citing California v. Greenwood, 486 U.S. 35, 41 (1988).

[Stone's] 1925(b) Statement only raised the allegation that the bag "could not be considered abandoned property based upon the location where it was found." As such, [Stone] has waived any additional argument based on lack of verification of the bag's contents or proof that the bag was left for pick up by the trash collector. PA. R.A.P. 1925(b)(4)(vii). In so concluding, we note that while Rule 1925(b) has been amended to specify that "[e]ach error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court" PA. R.A.P. 1925(b)(4)(v) (amended May 10, 2007, effective July 25, 2007), [Stone] is attempting to argue additional, not subsidiary grounds for relief. Further, such grounds were not asserted during the suppression hearing.

(Doc. 31-3 at 224-25, Commonwealth v. Stone, Nos. 502 MDA 2009, 671 MDA 2009 (Pa. Super. 2009) (footnote omitted)). The Pennsylvania Superior Court addressed issues raised in the suppression hearing regarding the trash being abandoned property, and affirmed the denial of the suppression motion. Stone filed a petition for allowance of appeal with the Pennsylvania Supreme Court. The Pennsylvania Supreme Court denied the petition for allowance of appeal.

Stone then filed a PCRA petition arguing, *inter alia*, that appellate counsel was ineffective in failing to properly pursue a suppression claim. The PCRA court denied the petition and Stone appealed to the Pennsylvania Superior Court. The Pennsylvania Superior Court affirmed the denial of Stone's PCRA petition, and found that the suppression court reasonably concluded that the trash bags had been abandoned, and that Stone failed to demonstrate prejudice. The Pennsylvania Superior Court stated:

[Stone] argues on appeal essentially that at the suppression hearing, Officer Eisenhart should have been limited to the allegations in the affidavit of probable cause. [Stone] quotes the Rules of Criminal Procedure:

> (B) No search warrant shall issue but upon probable
> cause supported by one or more affidavits sworn to before
> the issuing authority in person or using advanced
> communication technology. *The issuing authority, in*
> *determining whether probable cause has been established,*
> *may not consider any evidence outside the affidavits.*

PA.R.CRIM. P., Rule 203(B), 42 PA.C.S.A. (emphasis added). [Stone]
also cites <u>Commonwealth v. Coleman</u>, 574 Pa. 261, 830 A.2d 554 (2002),
for the proposition that "[i]n analyzing whether a warrant was
supported by probable cause, judicial review is confined to the four
corners of the affidavit." <u>Coleman</u>, 574 Pa. at 271, 830 A.2d at 560.
[Stone] complains that the affidavit of probable cause placed the trash
bags on the north side of the residence and not partially in the alley as
testified to by Officer Eisenhart.

[Stone's] argument improperly conflates two separate searches. In
determining whether the warrant for the search of the residence was
properly issued, the suppression court's review would be confined to
the four corners of the affidavit of probable cause. However, that is not
the search the suppression court was being asked to review; rather, the
court was reviewing the initial, warrantless search of the trash bags
and there was no underlying affidavit that confined that review. Thus,
in determining the propriety of the warrantless search of the trash
bags, the court could properly consider Officer Eisenhart's testimony
and pictorial indication that the trash bags were partially in the alley.
That being stated, we find that the court below properly declined to
suppress the evidence.

<u>Commonwealth v. Stone</u>, 2014 WL 10982116 at *3-4. Stone subsequently filed a

petition for allowance of appeal to the Pennsylvania Supreme Court, which was

denied.

The Fourth Amendment claims presented by Stone in the instant petition

relate to the suppression issues in the underlying criminal case. It is clear that

Stone was previously afforded a full and fair hearing on his Fourth Amendment

claims, having raised this issue with the York County Court of Common Pleas,

subsequently appealing this issue to the Superior Court, which affirmed the trial

court, and having his request to appeal to the Supreme Court of Pennsylvania denied. It is also clear that Stone raised this issue in his PCRA petition, and on subsequent appeal to the Superior Court and Supreme Court of Pennsylvania. Consequently, because Stone was afforded "full and fair litigation" of his Fourth Amendment claims in state court, the court is precluded from considering the merits of the Fourth Amendment claims raised in the instant federal habeas petition. Stone, 428 U.S. at 494.

### B.    Ineffective Assistance of Counsel

Stone asserts an ineffective assistance of counsel claim challenging his appellate counsel's failure to properly pursue a suppression claim. (Doc. 1 at 6-8). The Sixth Amendment right to counsel is the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This right to effective assistance of counsel also extends to the first appeal. Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). In Strickland, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. Strickland, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. See id.

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct. Id. at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. ("It is all too tempting for a defendant to second-guess counsel's

assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. Strickland, 466 U.S. at 691; United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. See Thomas v. Varner, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the Strickland test. Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. Strickland, 466 U.S. at 697.

The Superior Court rejected Stone's ineffective assistance of counsel claim when ruling on his PCRA appeal and found as follows:[5]

> On May 9, 2012, [Stone] filed the instant PCRA petition *pro se*. Counsel was appointed on June 4, 2012, and a hearing was held September 26, 2012. Among the issues raised was an issue as to appellate counsel's ineffectiveness in failing to properly pursue [Stone's] suppression claim. [Stone] also asserted that he was due certain credit for time served. On October 24, 2012, the PCRA court entered an opinion and order granting [Stone] relief as to the credit for time served issue, but denying relief as to all other issues including counsel's ineffectiveness in pursuing [Stone's] suppression claim. [Stone] now brings this timely appeal raising the sole issue of counsel's ineffectiveness in presenting the suppression claim on appeal.
>
> Our standard of review for an order denying post-conviction relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. Commonwealth v. Franklin, 990 A.2d 795, 797 (Pa. Super. 2010). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. Id.
>
> Moreover, as the issue on appeal is stated in terms of ineffective assistance of counsel, we also note that [Stone] was required to make the following showing in order to succeed with such a claim: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Commonwealth v. Rivera, 10 A.3d 1276, 1279 (Pa. Super. 2010). The failure to satisfy any prong of this test will cause the entire claim to fail. Commonwealth v. Daniels, 947 A.2d 795, 798 (Pa. Super. 2008). Finally, counsel is presumed to be effective, and appellant has the burden of proving otherwise. Commonwealth v. Pond, 846 A.2d 699, 708 (Pa. Super. 2003).

---

[5] On appeal from the PCRA court, the Pennsylvania Superior Court adopted the PCRA court's reasoning and affirmed the order of the PCRA court. Commonwealth v. Stone, 2014 WL 10982116 (Pa. Super. 2014); Doc. 31-4, at 133-46, Commonwealth v. Stone, No. CP-67-CR-0006522-2007, Oct. 24, 2012 PCRA Opinion. The Superior Court's opinion will be the primary reference point in addressing Stone's ineffective assistance of counsel claim in the instant habeas petition.

The PCRA court found merit in [Stone's] underlying issue; that is, if properly presented, this court would have reviewed [Stone's] suppression issue. The PCRA court also found no reasonable basis for counsel's failure. However, the PCRA court found that [Stone] failed to meet the third prong regarding prejudice, reasoning that this court would not have reversed on the suppression issue and remanded for a new trial. The PCRA court was correct.

Commonwealth v. Stone, 2014 WL 10982116, at *3.

When presented with Stone's claim that appellate counsel was ineffective in failing to properly pursue the suppression claim, the PCRA court and the Superior Court concluded that Stone was not entitled to relief. In applying the three prong test for determining whether appellate counsel was ineffective, the PCRA court and the Superior Court determined that although Stone met the first two prongs, he failed to meet the third prong. Both courts determined that Stone failed to establish any prejudice in appellate counsel's failure to raise the suppression issue, and that the Superior Court would not have reversed on the suppression issue and would not have remanded for a new trial.

The court finds no reason to question the findings of the PCRA and the Superior Court regarding appellate counsel's ineffectiveness in relation to the suppression claim. Their conclusions are neither contrary to nor an unreasonable application of controlling federal law, nor are they unreasonable determinations of the facts in light of the evidence presented at the state court proceedings. 28 U.S.C. § 2254(d). Therefore, Stone is not entitled to habeas relief on this claim.

## C.    Sixth Amendment Claim

Stone alleges that his constitutional rights under the Sixth Amendment Confrontation Clause were violated because he was not able to confront the

"concerned persons" in the affidavit of probable cause who provided information to the police. (Doc. 1 at 8-11). In reviewing the record, the court notes that this claim was not presented to the state courts.

As mentioned, to properly exhaust his state remedies, Stone must present fairly present his claims to the state court, either on direct appeal or by collateral review. See Castille, 489 U.S. at 349-50; Blasi v. Attorney General of Pa., 30 F. Supp. 2d 481, 487 (M.D. Pa. 1998). Because Stone did not raise his Sixth Amendment claim in either his direct appeal or his PCRA appeal, he has failed to exhaust his state remedies for this claim and the time to do so has expired. See Moore v. Morton, 255 F.3d 95, 103 n. 7 (3d Cir. 2001) (declining to review some of petitioner's prosecutorial misconduct claims where factual predicates for the claims (i.e., the prosecutor's particular actions/statements) were not raised in each New Jersey state court); see also McCandless, 172 F.3d at 261 (3d Cir. 1999) ("To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."). Stone's failure to timely present this claim at the state level constitutes an independent and adequate state ground sufficient to support a procedural default of this claim. Barnhart v. Kyler, 318 F. Supp.2d 250 (M.D. Pa. 2004). The merits of his procedurally defaulted claim cannot be reviewed unless he demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless, 172 F.3d at 260; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, he must point to some

objective external factor which impeded his efforts to comply with the state's procedural rule. See Murray, 477 U.S. at 488. "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Stone appears to concede that he procedurally defaulted his Sixth Amendment claim. (See Doc. 34). However, he argues that his procedural default should be excused based on Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 1316, 182 L.Ed.2d 272 (2012). Martinez created a very narrow exception to the procedural default rule. In Martinez, the United States Supreme Court held that a petitioner may establish cause to excuse procedural default of claims of ineffective assistance of trial counsel when post-conviction review is the first time a petitioner can bring such claims, and petitioner had either ineffective collateral appeal counsel or no counsel at all. Id. at 16-18. The Supreme Court cautioned that its holding did not apply to counsel's error in other kinds of proceedings, including second or successive collateral petitions, or petitions for discretionary review in state appellate courts. Id. at 16. In order to establish "cause," petitioner must show that collateral appeal counsel was not appointed or was ineffective under the standard set forth in Strickland, 466 U.S. at 695. Martinez, 566 U.S. at 13-14. Further, petitioner must also demonstrate that the underlying ineffectiveness of trial counsel claim is "substantial" and has "some merit." Id. at 14. See also Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014).

Stone argues that "as a matter of first impression, this Court should find that Martinez should extend to instances where a petitioner raises substantial and meritorious substantive constitutional issues during initial-review state PCRA collateral proceedings, a claim which trial counsel didn't reasonably and effectively discover, object to, raise, or otherwise preserve for direct appeal, and where collateral PCRA counsel is ineffective in not grounding the claim a petitioner seeks to assert under trial counsel's ineffectiveness." (Doc. 34 at 15).

To the extent that Stone claims that post-conviction counsel was ineffective for failing to raise ineffective assistance of *appellate* counsel claims, this claim is precluded. Martinez specifically addressed claims of ineffective assistance of *trial* counsel which were not raised in the initial post-conviction proceeding. The vast majority of circuit courts and Pennsylvania district courts have found that the narrow exception in Martinez applies only to claims of ineffectiveness of trial counsel and does not extend to claims of ineffectiveness of direct-appeal counsel. See Norris v. Brooks, 794 F.3d 401, 404-05 (3d Cir. 2015), cert. denied, 136 S. Ct. 1227, 194 L.Ed. 2d 225 (2016) (the Martinez exception "applies only to attorney error in initial-review collateral proceedings, not appeals from those proceedings") (citation omitted); see also Martinez, 566 U.S. at 16 (stating that its holding does "not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in State's appellate courts") (citation omitted). Thus, Stone cannot rely on Martinez to overcome the procedural default of a claim concerning ineffective assistance of direct appeal counsel because

Martinez is limited to defaults in collateral proceedings caused by ineffective counsel at the trial level, not in appeals.

Further, in Davila v. Davis, —— U.S. ——, 137 S.Ct. 2058, 198 L.Ed.2d 603 (2017), the United States Supreme Court addressed whether Martinez should be extended to "allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim." Id. at 2065. The Davila Court declined to extend Martinez to such cases. Id. According to the Court, "[o]n its face, Martinez provides no support for extending its narrow exception to new categories of procedurally defaulted claim." Id. Davila makes clear that the Martinez exception does not extend to underlying claims of appellate ineffectiveness. Davila, 137 S. Ct. at 2065. Therefore, Stone cannot utilize the Martinez exception to excuse the default of his claim of appellate ineffectiveness for not raising the Confrontation Clause claim on direct appeal. Stone's Sixth Amendment Confrontation Clause claim is procedurally barred and, thus, will be denied unless he can establish that a miscarriage of justice exception to procedural default should allow this claim to proceed.

To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically must show actual innocence. Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted). Stone has not demonstrated that a miscarriage of justice would result from the court's failure to consider his procedurally defaulted claim. Because Stone's Sixth Amendment claim has been procedurally defaulted, the

court is precluded from addressing the merits of this claim.  See Carpenter v. Vaughn, 888 F. Supp. 635, 646 (M.D. Pa. 1994).

## V.     Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Here, jurists of reason would not find the disposition of this case debatable.  Accordingly, a COA will not issue.

# VI.    <u>Conclusion</u>

For the reasons set forth above, the court will deny the petition for writ of

habeas corpus.  A separate order shall issue.


 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:      November 7, 2018